1   ANDREW V. JABLON (SBN 199083)
    E-Mail: ajablon@rpblaw.com
2   LINDSAY D. MOLNAR (SBN 275156)
    E-Mail: lmolnar@rpblaw.com
3   RESCH POLSTER & BERGER LLP
    9200 Sunset Boulevard, Ninth Floor
4   Los Angeles, California  90069-3604
    Telephone: 310-277-8300
5   Facsimile: 310-552-3209

6   Attorneys for Defendant Robert Stein

7

8                  UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  SCOTT BARBOUR, individually, and        Case No. CV 11-02335 DMG (JCGx)
    ZB FAMILY TRUST, SCOTT
12  BARBOUR, Trustee,                        **NOTICE OF MOTION AND
                                             MOTION OF DEFENDANT
13              Plaintiffs,                  ROBERT STEIN TO DISMISS
                                             PLAINTIFF'S COMPLAINT;
14       vs.                                 MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT
15  BRET SAXON, an individual;               THEREOF**
    CONDUIT MEDIA, INC., a California
16  corporation; TMP, INC., aka              **[Declaration of Andrew V. Jablon in
    TRANSACTIONAL MARKETING             support thereof filed concurrently]**
17  PARTNERS, INC., a California
    corporation; ROB STEIN, an              Hearing
18  individual; and DOES 1 through 50,      Date: April 25, 2011
    Inclusive,                              Time:  9:30 a.m.
19                                          Crtrm.: 7
                Defendants.
20                                          Trial Date:     None Set

21

22  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

23          PLEASE TAKE NOTICE that on April 25, 2011 , 2011, at 9:30 a.m., or as

24  soon thereafter as counsel may be heard, in Courtroom 7 of the above-entitled

25  Court, located at 312 N. Spring Street, Los Angeles, California, 90012, Defendant

26  Robert Stein (sued as Rob Stein) ("Defendant"), will, and hereby does, move the

27  Court for an order dismissing the Complaint of Plaintiffs (the "Complaint") in the

28  above captioned matter.

414904.4

1    This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil

2    Procedure on the basis that: (1) Plaintiffs fail to plead their purported claims with

3    the requisite particularity such that the Complaint fails to state a claim upon which

4    relief may be granted; and (2) Plaintiffs have failed to state sufficient facts to

5    constitute a claim for relief.

6    This Motion is based upon this Notice of Motion and Motion and supporting

7    documents, including without limitation the accompanying Memorandum of Points

8    and Authorities, the Declaration of Andrew V. Jablon, the papers, pleadings and

9    records on file in this action, and upon such other oral and documentary evidence

10   and argument as may be presented at or before the time of hearing.

11   This motion is made following the conference of counsel pursuant to L.R. 7-3

12   which took place on March 21, 2011.  (Declaration of Andrew V. Jablon, ¶ 2-7;

13   Exh. "B")

14   Dated: March 25, 2011                    RESCH POLSTER & BERGER LLP

15

16

17   By:  _____/S/_____

18                       ANDREW V. JABLON
                  Attorneys for Defendant Robert Stein

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ......................................................................... 9

II.   LEGAL ARGUMENT ................................................................. 10

    A.   The Complaint Must Be Dismissed Under *Fed. R. Civ. P.* 12(b)(6) as Plaintiffs Have Failed To Plead Their Claims with the Specificity Required By *Fed. R. Civ. P.* 9(b) ................................. 10

    B.   Plaintiffs' First through Fourth Claims for Relief Fail To State Facts Sufficient To State A Claim ......................................................... 12

        1.   The First Claim For Relief (Fraud in the Inducement) Contains No Charging Allegations As To Stein ........................ 12

        2.   The Second Claim For Relief For Breach of Contract Contains No Charging Allegations As To Stein ........................ 13

        3.   The Third Claim For Relief For Money Had and Received Does Not Allege A Claim, Both Generally as to All Defendants and Specifically As To Stein. ................................ 14

        4.   The Fourth Claim For Relief For Breach of Contract Fails As Stein Is Not A Party To The Purported Contract. ................. 15

    C.   Plaintiffs' Fifth Claim For Relief, Based On An Asserted Violation of the Federal RICO Statute, Fails To Set Forth Sufficient Facts To Set Forth An Actionable Claim. .......................... 15

        1.   Pleading Requirements Of A RICO Claim ................................ 16

        2.   Plaintiffs Fail To Allege The Element of "Conduct" By Stein ................................................................................ 17

        3.   Plaintiffs Fail To Properly Allege A RICO Enterprise ............. 20

            (a)   The Pleading Requirements Of A RICO "Enterprise" ................................................................. 20

            (b)   Plaintiffs Have Failed To Meet The Requirements Of Pleading A RICO Enterprise ...................................... 21

        4.   Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity. ......................................................... 22

            (a)   Plaintiffs Fail To Properly Allege The Predicate Acts Of Mail And Wire Fraud ........................................ 22

            (b)   As A Separate And Independent Basis For Granting

resch polster & berger llp

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Motion As To Stein, Two Predicate Acts Are Not Alleged ...................................................................... 25

D.     Leave to Amend Should Be Denied.......................................... 26

III.     CONCLUSION ................................................. 26

resch polster & berger llp

4

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (U.S. 2009) ......................................................... 11, 21

*Atlas Pile Driving Co. v. DiCon Fin. Co.*,
   886 F.2d 986 (8th Cir. 1989) ........................................................... 20

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ........................................................... 10

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ........................................................... 10, 12, 21

*Blair v. All American Bottling Corp.*,
   1988 U.S. Dist. LEXIS 15943 (S.D. Cal. 1988) ............................... 22

*Blake v. Dierdorff*,
   856 F.2d 1365 (9th Cir. Cal. 1988) ................................................. 25

*Bryant v. Mattel*,
   2010 U.S. Dist. LEXIS 103851 (C.D. Cal. 2010) ............................. 23

*Cholla Ready Mix, Inc. v. Civish*,
   382 F.3d 969 (9th Cir. 2004) ........................................................... 11

*Committee on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal.3d 197 (1983) ........................................................................ 13

*Compagnie de Reassurance D'Ile France v. New England Reinsurance Corp.*,
   825 F. Supp. 370 (D. Mass 1973) .................................................... 20

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ......................................................... 16

*Efron v. Embassy Suites, Inc.*,
   223 F.3d 12 (1st Cir. 2000) ............................................................. 17

*Ghouth v. Commodity Services, Inc.*,
   642 F.Supp. 1325 (N.D. Ill. 1986) .............................................. 23, 24

resch polster & berger llp

*Gil v. Bank of America, Nat. Assn.,*
    138 Cal.App.4th 1371 (2006) .......................................................... 12

*Graf v. Peoples,*
    2008 U.S. Dist. LEXIS 78919 (C.D. Cal. Aug. 31, 2008) ................................ 19

*Handeen v. Lemaire,*
    112 F.3d 1339 (8th Cir. Minn. 1997) .................................................. 17

*Heinsley v. Oakshade Town Center,*
    135 Cal.App.4th 289 (Cal. Ct. App. 2005) ............................................. 12

*In re VeriSign, Inc., Derivative Litig.,*
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................ 15

*Just Film, Inc. v. Merch. Servs.,*
    2010 U.S. Dist. LEXIS 130230 (N.D. Cal. 2010) ....................................... 19

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991) ....................................................... 16

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,*
    431 F.3d 353 (9th Cir. 2005) ......................................................... 16

*Lucas v. Dep't of Corr.,*
    66 F.3d 245 (9th Cir. 1995) .......................................................... 26

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007) ......................................................... 20

*of National Semiconductor Corp. v. Sporck,*
    612 F. Supp. 1316 (N.D. Cal. 1985) ................................................ 18, 22

*Oscar v. University Students Coop Ass'n,*
    965 F.2d 783 (9th Cir. 1992) ......................................................... 17

*PMC, Inc. v. Ferro Corp.,*
    131 F.R.D. 184 (C.D. Cal. 1990) ...................................................... 16

*Reichert v. General Ins. Co.,*
    68 Cal.2d 822 (1968) .............................................................. 14, 15

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) ............................................................... 17, 18

*Rich v. Shrader*,
   2010 U.S. Dist. LEXIS 98267 (S.D. Cal. Sept. 17, 2010) ................................. 24

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. Cal. 1986) ................................................... 23

*Schultz v. Harney*,
   27 Cal. App. 4th 1611 (1994) ........................................................ 14

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ................................................................. 16

*Sollberger v. Wachovia Sec., LLC*,
   2010 U.S. Dist. LEXIS 66233 .......................................................... 12

*Southern Leasing Partners v. McMullan*,
   801 F.2d 783 (5th Cir. Miss. 1986) ............................................. 10, 20

*Stansfield v. Starkey*,
   220 Cal.App.3d 59 (1990) ............................................................ 13

*Sun Savings and Loan Association v. Dierdorff*,
   825 F.2d 187, 196 (9th Cir. 1987) ............................................. 22, 25

*United States v. Turkette*,
   452 U.S. 576 (1981) ................................................................. 20

*University of Md. v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. Pa. 1993) .................................................... 18

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ....................................................... 19

## STATUTES

18 U.S.C. § 1961 ..................................................................... 20, 22

## OTHER AUTHORITIES

*Fed. R. Civ. P. 8* ............................................................ 10, 11, 21

resch polster & berger llp

*Fed. R. Civ. P.* 9 ................................................................................................passim

*Fed. R. Civ. P.* 11 ................................................................................................ 19

*Fed. R. Civ. P.* 12 ................................................................................................ 10

resch polster & berger LLP

8

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

3       Noticeably absent from the Complaint is any explanation as to why defendant
4 Robert Stein ("Stein") has been named.  There are no charging allegations in the
5 Complaint against Stein.   Rather, Stein is merely, as Plaintiffs Scott Barbour
6 ("Barbour") and the ZB Family Trust ("Trust", and collectively with Barbour,
7 "Plaintiffs") allege in the Complaint, the "accountant, bookkeeper, and finance
8 executive of one or more of [Bret] Saxon's business entities."  (Complaint, ¶ 4.)  He
9 is an employee; nothing more, nothing less.   Moreover, there are no charging
10 allegations against Stein.  In fact, the Complaint only references any specific act by
11 Stein on one occasion – i.e., in Paragraph 28 the Plaintiffs allege that Stein caused to
12 be transferred money lent by the Trust to co-defendant Bret Saxon ("Saxon") – but
13 does not, and cannot, allege that that the act was improper.  (See, Section II.C.2,
14 *infra*).

15      Simply put, Stein has been named as a defendant in this action *not* because of
16 any evidence or even good faith belief in that he might be liable for any alleged
17 wrongdoings.  Rather, Stein is caught in the cross-fire of a fight between Barbour
18 and Saxon, due to Barbour and his attorney's malicious intent to name Stein and
19 thereby:

20              (1)    antagonize Saxon[1]; and

21              (2)    induce Stein to provide false testimony about his boss.

22      In fact, Plaintiffs' counsel, Michael Burke, when pressed on why his clients
23 were going to name Stein when they knew he had nothing to do with any of the
24 alleged activities, responded, "I don't know.  I'm just going to start and see."

25

26 [1]  Barbour has demonstrated a willingness to do everything in his power to
27 antagonize Saxon, including sending an email to his wife and child. (Declaration of
Andrew V. Jablon, ¶4; Exh. "A".)
28

resch polster & berger llp

1  (Declaration of Andrew V. Jablon ("Jablon Decl."), ¶ 5)

2      At best, Plaintiff sued Stein

3          without knowing how he fit into the picture, apparently

4          hoping that later discovery would uncover something.  If

5          Rule 11 is to mean anything and we think it does, it must

6          mean an end to such expeditionary pleadings. "This

7          'shotgun approach' to pleadings, . . . where the pleader

8          heedlessly throws a little bit of everything into his

9          complaint in the hopes that something will stick, is to be

10          discouraged." *Rodgers v. Lincoln Towing Serv., Inc.*, 596

11          F. Supp. 13, 27 (N.D. Ill. 1984)

12  *Southern Leasing Partners v. McMullan*, 801 F.2d 783 (5th Cir. Miss. 1986).

13      Accordingly, the issue presented by this Motion is straightforward.  Plaintiffs

14  have failed to put forth any allegations against Stein, let alone with the specificity

15  required by *Fed. R. Civ. P. 8* and 9, or *Bell Atlantic v. Twombly*, 550 U.S. 544

16  (2007) and its progeny, necessary to state an actionable claim for relief as to Stein.

17  Accordingly, the Motion should be granted and the Complaint, as to Stein,

18  dismissed with prejudice.

19

20  **II.**    **LEGAL ARGUMENT**

21      **A.**    **The Complaint Must Be Dismissed Under *Fed. R. Civ. P.* 12(b)(6)**

22          **as Plaintiffs Have Failed To Plead Their Claims with the Specificity**

23          **Required By *Fed. R. Civ. P.* 9(b).**

24      Pursuant to *Fed. R. Civ. P.* 12(b)(6), this Court is required to dismiss the

25  Complaint in "the absence of sufficient facts alleged under a cognizable legal

26  theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

27      To survive a motion to dismiss, a complaint must contain

28      sufficient factual matter, accepted as true, to "state a claim to

*resch* polster & berger LLP

1    relief that is plausible on its face." [*Twombly*], at 570, 127 S.

2    Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility

3    when the plaintiff pleads factual content that allows the court

4    to draw the reasonable inference that the defendant is liable

5    for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167

6    L. Ed. 2d 929. The plausibility standard is not akin to a

7    "probability requirement," but it asks for more than a sheer

8    possibility that a defendant has acted unlawfully. *Ibid.* Where

9    a complaint pleads facts that are "merely consistent with" a

10   defendant's liability, it "stops short of the line between

11   possibility and plausibility of 'entitlement to relief.'" *Id.*, at

12   557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

13 *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (U.S. 2009).    Accordingly,

14 "[t]hreadbare recitals of the elements of a claim for relief, supported by mere

15 conclusory statements, do not suffice. . .   Rule 8 marks a notable and generous

16 departure from the hyper-technical, code-pleading regime of a prior era, but it does

17 not unlock the doors of discovery for a plaintiff armed with nothing more than

18 conclusions." *Id.*, at 1950.  Moreover, the Court is *not* "required to accept as true

19 allegations that are merely conclusory, unwarranted deductions of fact, or

20 unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th

21 Cir. 2004).

22    Here, where a claim sounds in fraud – e..g, Plaintiffs First and Fifth Claims

23 for Relief – the heightened pleading requirements of *Fed. R. Civ. Pro.* 9 apply.

24 Specifically, *Fed. R. Civ. Pro.* 9(b) requires that "[i]n all averments of fraud or

25 mistake, the circumstances constituting fraud or mistake shall be stated with

26 particularity."

27    As discussed below, the Complaint a meaningless jumble of allegations that

28 simply fail to state a claim.  Instead of pleading clear, factual allegations against

1   each of the named Defendants, Plaintiffs relied on an improper shotgun style of

2   pleading, "using the omnibus term 'Defendants' throughout . . . grouping defendants

3   together without identifying what the particular defendants specifically did wrong. .

4   . [and] recit[ing] a collection of general allegations toward the beginning of the

5   Complaint, and then 'each count incorporates every antecedent allegation by

6   reference. *Sollberger v. Wachovia Sec., LLC*, 2010 U.S. Dist. LEXIS 66233, *11-12

7   quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001).   Simply,

8   Plaintiffs have wholly disregarded the requirements articulated in *Bell Atlantic v.*

9   *Twombly*, 550 U.S. 544 (2007) and its progeny, as well as the heightened pleading

10  requirements of *Fed. R. Civ. Pro.* 9 for claims associated with fraud.

11

12      **B.**      **Plaintiffs' First through Fourth Claims for Relief Fail To State**

13               **Facts Sufficient To State A Claim**

14          **1.**      **The First Claim For Relief (Fraud in the Inducement)**

15                   **Contains No Charging Allegations As To Stein.**

16          Plaintiffs' First Cause of Action, for fraud in the inducement, fails to include

17  *any* charging allegations as to Stein.

18          Fraud in the inducement is a subset of the tort of fraud.   *Heinsley v. Oakshade*

19  *Town Center*, 135 Cal.App.4th 289, 294 (Cal. Ct. App. 2005).   It "occurs when 'the

20  promisor knows what he is signing but his consent is induced by fraud, mutual

21  assent is present and a contract is formed, which, by reason of the fraud, is

22  voidable.'"  *Id*. at 294-95 (quoting *Rosenthal v. Great Western Fin. Securities Corp.*,

23  14 Cal.4th 394, 415 (1996)).   Thus, Plaintiff must specifically allege the elements of

24  fraud – i.e., "a [1] misrepresentation, [2] knowledge of its falsity, [3] intent to

25  defraud, [4] justifiable reliance and [5] resulting damage." *Gil v. Bank of America,*

26  *Nat. Assn*., 138 Cal.App.4th 1371, 1381 (2006) (citing *Universal By-Products, Inc.*

27  *v. City of Modesto*, 43 Cal.App.3d 145, 151 (1974)).   Moreover, as noted above,

28  *Fed. R. Civ. P.* 9(b) requires that "[i]n all averments of fraud or mistake, the

resch polster & berger llp

1  circumstances constituting fraud or mistake shall be stated with particularity."[2]

2  Here, Plaintiffs have alleged that *Saxon*, not Stein, misrepresented *Saxon's*

3  financial position to induce them to loan the money in dispute.  Nowhere in the

4  Complaint is there any allegation that *Stein* made any representations to Plaintiffs,

5  false or otherwise.  As a result, Plaintiffs have not, and cannot satisfy their burden

6  allege the first three elements of a fraud claim as to Stein – i.e., a misrepresentation,

7  knowledge of its falsity, and intent to defraud.

8  Plaintiffs also cannot rely on the alleged misdeeds of Saxon to assert liability

9  on Stein.  As noted above, Stein is identified in the Complaint only as the

10  "accountant, bookkeeper, and finance executive of one or more of Saxon's business

11  entities."  (Complaint, ¶ 4.)  There simply are no allegations of Stein's participation

12  in the purported fraud, or anything to establish liability by Stein.  As such, there is

13  nothing in the Complaint that would allow for the purported liability of an employer

14  ("one or more of Saxon's business entities") to spill over to the employee.

15  ### 2.  The Second Claim For Relief For Breach of Contract
16  ### Contains No Charging Allegations As To Stein.

17  Again, noticeably absent in the Second Claim for Relief, for breach of

18  contract, are *any* charging allegations as to Stein.  To state a cause of action for

19  breach of contract *by Stein*, Plaintiffs were required to allege: (1) a contract with

20  Stein; (2) their performance or excuse for nonperformance; (3) Stein's breach; and

21  ———————————

22  [2] This comports with California state law pleading requirements, under which this
23  Complaint was initially filed, which prohibits the general pleading of the legal
24  conclusion of fraud; the facts constituting the fraud must be alleged and every
    element of the cause of action for fraud must be alleged in the proper manner (i.e.,
25  factually and specifically).  *Committee on Children's Television, Inc. v. General
    Foods Corp.*, 35 Cal.3d 197, 216 (1983).  The particularity requirement necessitates
26  the pleading of facts which show how, when, where, to whom, and by what means,
27  the allegedly fraudulent activity occurred.  *Stansfield v. Starkey*, 220 Cal.App.3d 59,
    73 (1990).

28

1   (4) resulting damages to Plaintiffs.  *See Reichert v. General Ins. Co.*, 68 Cal.2d 822,

2   830 (1968).

3        Here, the purported loans were, per the express allegations of the Complaint

4   (and supporting exhibits), made to Saxon and/or his business entities – i.e., *not*

5   Stein.  *See,* Complaint ¶ 17 ("Saxon approached Barbour and asked Barbour to loan

6   him $150,000"); Complaint ¶ 27 ("Saxon sought to borrow an additional $250,000. .

7   and transferred $250,000.00 from the ZB Family Trust into Saxon's own personal

8   account"); Complaint ¶ 30 ("Saxon informed Barbour that . . . he needed to borrow

9   $150,000 more"); and Complaint, Exhibit "G" (purportedly confirming loans to

10   Conduit Media, Inc. and Bret Saxon, an individual).

11        Accordingly, Plaintiffs have failed to allege a contract <u>with Stein</u>, breach of a

12   contract <u>by Stein</u>, or, of course, resulting damages.  Accordingly, the Motion should

13   be granted.

14        **3.        The Third Claim For Relief For Money Had and Received**

15        **Does Not Allege A Claim, Both Generally as to All**

16        **Defendants and Specifically As To Stein.**

17        "A claim for relief is stated for money had and received if the defendant is

18   indebted to the plaintiff in a certain sum for money had and received by the

19   defendant for the use of the plaintiff."  *Schultz v. Harney*, 27 Cal. App. 4th 1611,

20   1623 (1994).  Here, Plaintiffs fail to properly allege a claim against *any* Defendant,

21   as the Complaint fails to allege that the money purportedly received by the

22   Defendants was *for the benefit of the Plaintiffs*.

23        Regardless, Plaintiffs again fail to include *any* charging allegations as to

24   Stein.  Plaintiffs specifically allege that the money at issue was received by Conduit

25   Media, Inc. and Saxon, individually.  *See,* Complaint ¶ 17 ("Saxon approached

26   Barbour and asked Barbour to loan him $150,000"); Complaint ¶ 27 ("Saxon sought

27   to borrow an additional $250,000 . . . and transferred $250,000.00 from the ZB

28   Family Trust into Saxon's own personal account"); Complaint ¶ 30 ("Saxon

1  informed Barbour that. . .he needed to borrow $150,000 more"); and Complaint,

2  Exhibit "G" (purportedly confirming loans to Conduit Media, Inc. and Bret Saxon,

3  an individual).   There are simply no allegations that Stein received any monies.

4  Moreover, in light of the express allegations to the contrary, the claim fails as to

5  Stein and is not capable of being cured by an amendment.

6          **4.**      **The Fourth Claim For Relief For Breach of Contract Fails**

7                    **As Stein Is Not A Party To The Purported Contract.**

8        Plaintiffs' purported Fourth Claim for Relief alleges breach of Barbour's

9  individual employment contract with defendant TMP.  (Complaint, ¶¶ 13 and 62).

10  While the Complaint fails to state a claim against *any* of the Defendants for breach

11  of contract, as the terms of the purported contract are not set forth with the requisite

12  specificity (*see generally*, *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d

13  1173 (N.D. Cal. 2007)), those terms that are alleged make clear that Stein is *not* a

14  party to the subject contract.  Accordingly, the Motion to Dismiss as to the Fourth

15  Claim for Relief should be granted.  *Reichert*, 68 Cal.2d at 830.

16

17  **C.**    **Plaintiffs' Fifth Claim For Relief, Based On An Asserted Violation**

18           **of the Federal RICO Statute, Fails To Set Forth Sufficient Facts To**

19           **Set Forth An Actionable Claim.**

20      In 1990, Judge Bonner of the Central District of California noted:

21            Like other courts, and perhaps Congress, this Court is

22            legitimately concerned about the misuse of civil RICO and

23            the increasingly familiar phenomenon of expanding a

24            straight-forward breach of contract into a claim of

25            promissory fraud. A plaintiff then asserts two or more

26            mailings in furtherance of promissory fraud and, presto,

27            claims a civil RICO violation. Distressingly, this type of

28            pleading inflation has become all too common,

resch polster & berger LLP

1    particularly in the litigious climate of California. Since
2    civil practitioners discovered the RICO statute some ten
3    years ago, it seems that the lure of transforming a simple,
4    single damage contract claim into a treble damage RICO
5    claim has proved irresistible. To sketch what is becoming
6    more frequent is to begin to understand the dangers of
7    abusing the RICO weapon. Even if one ignores the *in*
8    *terrorem* effect of spurious treble damage suits, the danger
9    of protracted and extraordinarily expensive discovery
10   engendered by civil RICO claims is all too real.

11   *PMC, Inc. v. Ferro Corp*., 131 F.R.D. 184, 187 (C.D. Cal. 1990).  Twenty-one years

12   later, the RICO statute is still being abused, as evidenced by the Complaint which

13   attempts to raise the specter of a RICO claim without *any* supporting factual

14   allegations.

15          **1.    Pleading Requirements Of A RICO Claim**

16          The elements of a RICO claim are: "(1) conduct (2) of an enterprise (3)

17   through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing

18   injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de*

19   *Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). The plaintiff must, of course,

20   specifically allege each of these elements to state a claim. *Sedima, S.P.R.L. v. Imrex*

21   *Co*., 473 U.S. 479, 496 (1985).  Further, cases in which RICO claims are predicated

22   upon fraud – such as here, where Plaintiffs make the conclusory allegation of mail

23   and wire fraud – must conform to the particularized pleading requirements of *Fed.*

24   *R. Civ. Pro.* 9(b).   *I.e.,* they must state the time, place, and specific content of the

25   false representations as well as the identities of the parties to the misrepresentation.

26   *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004); and

27   *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th

28   Cir. 1991) (*Fed. R. Civ. Pro.* 9 requires that Plaintiffs "detail with particularity the

414904.4                                        16

1    time, place, and manner of each act of fraud, *plus the role of each defendant in each*
2    *scheme*." (emphassis added)).

3            Critically, the heightened pleadings requirements of Rule 9 are strictly applied
4    to RICO claims because Congress enacted RICO "to combat organized crime, not to
5    provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v.*
6    *University Students Coop Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992).  In fact, Courts
7    are to scrutinize RICO cases predicated on mail and wire fraud – such as
8    purportedly alleged here – particularly closely "because of the relative ease with
9    which a plaintiff may mold a RICO pattern from allegations that, upon further
10   scrutiny, do not support it." *Efron v. Embassy Suites, Inc.*, 223 F.3d 12, 20 (1st Cir.
11   2000).

12           Plaintiffs' Complaint fails to properly allege a RICO violation – by any of the
13   Defendants – and its defective pleading cannot be cured.

14                **2.      Plaintiffs Fail To Allege The Element of "Conduct" By Stein**

15           Initially, Plaintiffs have failed to allege conduct by Stein contributing to the
16   alleged RICO conspiracy.  In *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993), the
17   Supreme Court held that liability under § 1962(c), for violations of the RICO
18   statute, was limited  to "those who participate in the operation or management of an
19   enterprise through a pattern of racketeering activity." "In order to 'participate,
20   directly or indirectly, in the conduct of such enterprise's affairs, one must have some
21   part in directing those affairs."  While that does not mean that liability is limited to
22   upper management, "the word 'participate' makes clear that RICO liability is not
23   limited to those with primary responsibility for the enterprise's affairs. . . *[but] some*
24   *part in directing the enterprise's affairs is required*." *Id*. at 179.  But differently,
25   "Congress did not mean for § 1962(c) to penalize all who are employed by or
26   associated with a RICO enterprise, but only those who, by virtue of their association
27   or employment, play a part in directing the enterprise's affairs." *Handeen v.*
28   *Lemaire*, 112 F.3d 1339, 1348-1349 (8th Cir. Minn. 1997).

414904.4                                              17

1    Bare allegations – such as all that is present here – that each of the defendants

2 "caused" or "permitted" certain events to occur are insufficient for Rule 9(b)

3 purposes under any of the RICO provisions. *See, Lewis on behalf of National*

4 *Semiconductor Corp. v. Sporck*, 612 F. Supp. 1316, 1325 (N.D. Cal. 1985).  For

5 instance, in *Sporck*, the court held that if the plaintiff purports to sue directors,

6 accounting officers, and mid-level employees of one of the defendant corporations

7 under Section 1962(a)-(c), he must delineate with precision the involvement of the

8 different groups of defendants. *Id*. at 1325.

9    Here, the Complaint fails to allege Stein's role, generally or specifically,

10 within the alleged conspiracy and control of decisions therein.  Moreover, the fact

11 that Stein acted as an accountant for a purported RICO enterprise will not, absent

12 more, rise to the level of participation sufficient to satisfy the Supreme Court's

13 pronouncement of the "operation or management" test articulated in *Reves v. Ernst*

14 *& Young*, 507 U.S. 170 (1993)  ("one is not liable . . . unless one has participated in

15 the operation or management of the enterprise itself).

16    As such, a growing number of courts have held that an attorney or other

17 professional, e.g., accounting services, does not conduct an enterprise's affairs

18 through run-of-the-mill provision of professional services.

19        Simply because one provides goods or services that

20        ultimately benefit the enterprise does not mean that one

21        becomes liable under RICO as a result. There must be a

22        nexus between the person and the conduct in the affairs of

23        an enterprise. The operation or management test goes to

24        that nexus. In other words, *the person must knowingly*

25        *engage in "directing the enterprise's affairs" through a*

26        *pattern of racketeering activity*. Reves, 113 S. Ct. at 1170.

27 *University of Md. v. Peat, Marwick, Main & Co*., 996 F.2d 1534, 1539 (3d Cir. Pa.

28 1993).  Whether an outside contracted professional or an employee-accountant, an

1   accountant cannot be held liable for RICO violations for performing his or her

2   general financial activities absent evidence of knowingly directing the enterprise's

3   affairs.

4         Here, other than the introductory paragraph identifying Stein as the

5   "accountant, bookkeeper, and finance executive of one or more of [Bret] Saxon's

6   business entities" (Complaint, ¶ 4), the only other time Stein is described as doing

7   anything is in paragraph 28, wherein it is alleged that

8                 without any signed agreement from Barbour and without

9                 any signed instructions from Barbour to his bank,

10                Defendant ROB STEIN, the accountant and bookkeeper

11                for Saxon and his entities, went to a Bank of America

12                branch and transferred $250,000.00 from the ZB Family

13                Trust into Saxon's own personal account.

14  Noticeably absent, however, is any allegation that this transfer was not authorized

15  by the Plaintiffs.  This cleverly drafted allegation is intentional, as Plaintiff Barbour

16  admitted that the transfer was authorized, a fact that will be discussed in a Rule 11

17  Motion that Stein will be filing.  *See*, Jablon Decl., ¶ 6.

18        Accordingly, the only allegation against Stein is that he performed financial

19  services for Saxon and his companies.  Yet "simply performing services for the

20  enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244,

21  1249 (9th Cir. 2008) (holding that knowingly implementing decisions of upper

22  management was insufficient to establish RICO liability); *see also, Just Film, Inc. v.*

23  *Merch. Servs.*, 2010 U.S. Dist. LEXIS 130230, *31 (N.D. Cal. 2010); and *Graf v.*

24  *Peoples*, 2008 U.S. Dist. LEXIS 78919, 21-22 (C.D. Cal. Aug. 31, 2008) ("One who

25  has no managerial role is not liable.").

26        Having failed to allege any *conduct* by Stein in connection with the alleged

27  RICO conspiracy, the claim for relief necessary fails and the Motion should be

28  granted.  Moreover, as fishing expeditions in the hope that discovery would later

resch polster & berger llp

414904.4                                    19

1    develop an actionable claim are not permitted (*Southern Leasing Partners v.*

2    *McMullan*, 801 F.2d 783 (5th Cir. Miss. 1986)), amendment should not be allowed.

3        **3.    Plaintiffs Fail To Properly Allege A RICO Enterprise**

4            **(a)    <u>The Pleading Requirements Of A RICO "Enterprise"</u>**

5        To state a RICO claim Plaintiffs must allege "both the existence of an

6    'enterprise' and a connected 'pattern of racketeering activity'." *Compagnie de*

7    *Reassurance D'Ile France v. New England Reinsurance Corp.*, 825 F. Supp. 370 (D.

8    Mass 1973).

9        A RICO "enterprise" includes "any individual, partnership, corporation,

10   association, or other legal entity, or any union or group of individuals associated in

11   fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, an enterprise may be a

12   legal entity, such as a corporation, or may be "a group of persons associated together

13   for a common purpose of engaging in a course of conduct." *United States v.*

14   *Turkette*, 452 U.S. 576, 583 (1981).   Although an "associated-in-fact enterprise

15   under RICO does not require any particular organizational structure, separate or

16   otherwise", *Odom v. Microsoft Corp.*, 486 F.3d 541, 548-53 (9th Cir. 2007), there

17   must be (1) a common purpose,  (2) an ongoing organization, and (3) "evidence that

18   the various associates function as a continuing unit." *Id*. at 552-53 (citing and

19   quoting *Turkette*, 452 U.S. at 583).  This enterprise must be distinct from the people

20   named as the RICO defendants as well as distinct from the alleged pattern of

21   racketerring activity.  *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995

22   (8th Cir. 1989); *United States v. Turkette*, 452 U.S. 576, 583 (1981) (enterprise not

23   established merely by proof of a series of racketeering acts, but must exhibit three

24   characteristics: (1) common or shared purpose; (2) some continuity of structure and

25   personnel; and (3) an ascertainable structure distinct from that inherent in a pattern

26   of racketeering).  Finally, to plead the existence of an ongoing enterprise, Plaintiffs

27   were required to allege that the enterprise is "a vehicle for the commission of two or

28   more predicate crimes." *Id*. (quoting *United States v. Cagnina*, 697 F.2d 915, 921

414904.4

1  (11th Cir. 1983)).

2  **(b)**     <u>**Plaintiffs Have Failed To Meet The Requirements Of**</u>

3                    <u>**Pleading A RICO Enterprise**</u>

4        Plaintiffs' attempt to plead a RICO enterprise is limited to Paragraph 71 of the

5  Complaint, wherein they assert in conclusory fashion only:

6             During all relevant times, Saxon, Stein, Conduit, and other

7             entities unknown to Plaintiffs were and are part of an

8             "enterprise" as the term is defined in 18 U.S.C. § 1961(4),

9             having a common or shared purpose, functioning as a

10            continuing unit, engaged in interstate commerce and the

11            activities of which affect interstate commerce, and which

12            has an ascertainable structure distinct from that which is

13            inherent in the conduct of the pattern of racketeering.

14            Plaintiffs are informed and believe that Saxon and/or Stein

15            established numerous subsidiaries or affiliates of IMG, in

16            order to effect the enterprise and deceive investors and

17            creditors. Plaintiffs are informed and believe that Saxon

18            and/or Stein may have used IMG and/or Conduit to effect

19            the enterprise and deceive investors and creditors.

20 These conclusory allegations do not meet the specificity requirements of *Twombly*

21 and its progeny.

22       As noted above, "[t]hreadbare recitals of the elements of a claim for relief,

23 supported by mere conclusory statements, do not suffice. . .  Rule 8 marks a notable

24 and generous departure from the hyper-technical, code-pleading regime of a prior

25 era, but it does not unlock the doors of discovery for a plaintiff armed with nothing

26 more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. at 1950.  What is the common

27 purpose of the purported enterprise?  How do the various associates function as a

28 continuing unit? What is the continuity of structure and personnel?  How is this

resch polster & berger llp

1   structure distinct from that inherent in a pattern of racketeering?  Plaintiffs cannot

2   simply make the statement that there is a RICO Enterprise and not provide any

3   supporting factual allegations.

4      **4.    Plaintiffs Have Failed To Allege A Pattern Of Racketeering**

5      **Activity.**

6      Additionally, Plaintiffs do not plead facts establishing a "pattern of

7   racketeering activity." A "'pattern of racketeering activity' requires at least two acts

8   of *racketeering activity* . .. the last of which occurred within ten years . . . after the

9   commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (emphasis

10  added). Significantly, alleged "[b]ad acts, alone, do not qualify as predicate acts for

11  RICO purposes; only those activities set forth in 18 U.S.C. § 1961(1) may serve as

12  the basis of a RICO claim."  *Lewis on behalf of National Semiconductor Corp. v.*

13  *Sporck*, 612 F. Supp. 1316, 1325 (N.D. Cal. 1985).

14     Here, Paragraph 66 of the Complaint attempts to assert mail and wire fraud as

15  the requisite predicate acts by alleging, *on information and belief*, that "Defendants,

16  and each of them, committed fraud via Internet communications, facsimile

17  transmissions, telephone conversations, mail fraud, and wire transfers occurring in

18  Interstate commerce."  Allegations on information and belief, without any specific

19  facts, do not comport with the heightened pleading requirements of *Fed. R. Civ. P.* 9

20  required for pleading mail and wire fraud.

21     (a)    <u>Plaintiffs Fail To Properly Allege The Predicate Acts</u>

22     <u>Of Mail And Wire Fraud</u>

23     For Plaintiffs to have properly alleged mail fraud, they were required to plead

24  that: "(1) defendant devised a scheme or artifice to defraud; (2) *defendant used the*

25  *mails in furtherance of the scheme*; and (3) defendant did so with the specific intent

26  to deceive or defraud." *Blair v. All American Bottling Corp.*, 1988 U.S. Dist. LEXIS

27  15943, *11-12 (S.D. Cal. 1988) (emphasis added).  For example, in *Sun Savings and*

28  *Loan Association v. Dierdorff*, the Court held mailings to be in furtherance of a

scheme if the completion of the scheme or the prevention of its detection is in some way dependent upon the mailings. *Sun Savings*, 825 F.2d 187, 196 (9th Cir. 1987) (citing *United States v. Sampson*, 371 U.S. 75, 80 (1962) and *United States v. Mitchell*, 744 F.2d 701, 703 (9th Cir. 1984)).  Similarly, "a wire fraud violations consists of (1) the formation of a scheme or artifice to defraud; (2) *use of the United States wires or causing a use of the United States wires in furtherance of the scheme*; and (3) specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. Cal. 1986).

With respect to both mail and wire fraud, which "share elements and are therefore evaluated under the same framework" (*Bryant v. Mattel*, 2010 U.S. Dist. LEXIS 103851, *20-21 (C.D. Cal. 2010)), *Fed. R. Civ. Pro.* 9(b) requires that the Complaint allege, with specificity, "who (i.e., which defendant) caused what to be mailed when, and how that mail furthered the fraudulent scheme."  *Ghouth v. Commodity Services, Inc.*, 642 F.Supp. 1325, 1331-32 (N.D. Ill. 1986).  As recently noted by the Southern District of California,

> when a plaintiff relies on charges of wire and mail fraud as the predicate acts of a RICO claim, the factual circumstances of the fraud itself must be pled with particularity as required by Rule 9(b). *Odom*, 486 F.3d at 554; *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (quotations and alterations omitted); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (plaintiff must

1    identify role of each defendant in the alleged RICO

2    scheme).

3  *Rich v. Shrader*, 2010 U.S. Dist. LEXIS 98267 (S.D. Cal. Sept. 17, 2010)

4       Here, the Complaint necessarily fails for three reasons: (1) Plaintiffs have

5  failed to allege with the requisite specificity the various Defendants' roles in the

6  purported mail and wire fraud; (2) Plaintiffs have failed to allege the required

7  elements of the predicate acts of mail and wire fraud; and (3) those acts that were

8  alleged, on their face, do not implicate the mail or wires.  There are no facts in the

9  Complaint establishing the formation of the scheme, let alone "who (i.e., which

10 defendant) caused what to be mailed [or transmitted over the wires] when, and how

11 that mail [or wire transmission] furthered the fraudulent scheme."   *Ghouth v.*

12 *Commodity Services, Inc.*, 642 F.Supp. 1325, 1331-32 (N.D. Ill. 1986).  There are

13 only the conclusory recitations of the elements of the claim found in Paragraphs 71

14 77.

15      These defects cannot be rectified by amendment as each of the alleged

16 fraudulent statements and related transactions were, per the express allegations of

17 the Complaint, *not* done via the mails or wires.  *See*, Complaint ¶ 17 ("Saxon

18 approached Barbour and asked Barbour to loan him $150,000.00 for two weeks");

19 ¶28 and Exh. "D" (in-person transfer of funds between two Bank of America

20 accounts located at the same branch); ¶ 30-31 and Exh. "F" (alleging upon Saxon's

21 return from Egypt, requested from Barbour an additional $150,000 which was

22 provided by check).[3]

23      Accordingly, the Fifth Claim for Relief fails as to all Defendants, and the

24 Motion by Stein to Dismiss the same should be granted.

25 _____

26 [3] There is also no allegation that the purported misdeeds alleged in Paragraphs 45

27 and 46, for which Plaintiffs do not allege that they were damaged, involved mail or
   wire fraud.

28

(b)    **As A Separate And Independent Basis For Granting The Motion As To Stein, Two Predicate Acts Are Not Alleged**

RICO requires that each of the defendants

> directly or indirectly conduct or participate in the enterprise's affairs through a pattern of racketeering activity. *Id*. Thus, rather than requiring that the enterprise itself conduct the racketeering activity, RICO simply requires a "nexus" between the enterprise and the racketeering activity. *Id.* As the Supreme Court stated in *Sedima*, the essence of a violation of section 1962(c) "is the commission of those acts [of racketeering] in connection with the conduct of an enterprise." *Sedima*, 105 S. Ct. at 3286 (emphasis added).

*Blake v. Dierdorff*, 856 F.2d 1365, 1370-1371 (9th Cir. Cal. 1988) (holding that two or more predicate acts are required to satisfy RICO's pattern requirement and that an allegation of only one possible predicate act by defendant fails to state a RICO claim against that particular defendant).

Here, the only alleged activity undertaken by Stein was,

> without any signed agreement from Barbour and without any signed instructions from Barbour to his bank, Defendant ROB STEIN, the accountant and bookkeeper for Saxon and his entities, went to a Bank of America branch and transferred $250,000.00 from the ZB Family Trust into Saxon's own personal account.

(Complaint, ¶ 28.)  Even if the Court were to ignore that there is no allegation that this transfer was unauthorized (as discussed above in Section II(C)(2)), and that the action cannot constitute wire fraud (as it was an in-person transfer of funds between

resch polster & berger llp

1   two Bank of America accounts located at the same branch), this is the sole act by

2   Stein identified in the Complaint.  To state a claim against Stein, however, Plaintiffs

3   were *required* to allege *two or more* predicate acts by Stein. *Sun Savings*, 825 F.2d

4   at 193. The complaint alleges only one possible predicate act by Stein: his transfer

5   of funds as authorized by Plaintiffs.  Thus, the complaint fails to state a RICO claim

6   against Stein.

7

8           **D.     Leave to Amend Should Be Denied**

9           Finally, leave to amend should not be granted because "it is absolutely clear

10  that no amendment can cure the defects." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

11  (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000).  Here,

12  the nature of the defective pleadings are such that no amendment can cure the

13  defects, and any attempt to do so would only further the malicious prosecution

14  against Stein.  Accordingly, leave to amend should be denied and Stein dismissed

15  with prejudice from this action.

16

17  **III.    CONCLUSION**

18          Accordingly, for the reasons set forth above, defendant Robert Stein

19  respectively requests that the Court grant his Motion in its entirety and dismiss the

20  complaint as to him, in its entirety, without leave to amend.

21  Dated: March 25, 2011                    RESCH POLSTER & BERGER LLP

22

23

24                                          By: _____/S/_____

25                                               ANDREW V. JABLON
                                               Attorneys for Defendant Robert Stein

26

27

28